UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD C., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   Case No. 3:18-CV-537 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Richard C.[1] applied for social security disability benefits, claiming that he was no longer able to work. He alleged that he became disabled around the time he fell and hurt his leg and hip, and that he experienced pain and swelling in his left leg. He also took medication for hypertension, and testified to experiencing swelling in his hands and face and blurred vision. An administrative law judge found that Mr. C. did not have any severe impairments that lasted for at least one year, so he denied Mr. C.'s claim. For the following reasons, the Court reverses that decision and remands for further proceedings.

## I. FACTUAL BACKGROUND

Mr. C. applied for social security disability benefits in January 2015. He alleged that he became disabled in December 2014, when he experienced a fall that caused swelling to his left leg, and that he had a rod in his left leg from an injury about ten years earlier. Mr. C. sought medical treatment on very few occasions, though. He visited the emergency room in December 2014 for a fall he experienced about a week earlier. He reported that he had been experiencing

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

severe pain in his left knee and had tenderness in his tailbone. The doctor noted swelling and bruising in the leg. X-rays reflected no acute injury, but showed a healed fracture and hardware from an injury Mr. C. experienced about ten years earlier. The doctor noted that Mr. C might have had a soft tissue injury and gave him crutches, and also referred him to counseling for alcohol abuse. Mr. C. next sought medical treatment about two years later, complaining of swelling in his face and hands, which the doctors related to his hypertension and effects from his medication. He saw doctors in December 2016 and January and February 2017 about those symptoms.

After applying for disability benefits, Mr. C. attended an examination with an agency physician, who opined that Mr. C. was limited to essentially sedentary work. Two agency reviewing physicians offered similar opinions about Mr. C.'s limitations but concluded that he was still able to perform other work. After a hearing before an administrative law judge, the ALJ denied Mr. C.'s claim. The ALJ concluded that while Mr. C. had severe impairments, those impairments did not endure for at least twelve months, so Mr. C. did not qualify as disabled. The appeals council denied review, so Mr. C. filed this action seeking review of that decision.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the

disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. § 404.1522(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

The ALJ concluded his analysis at step two. Though he found that Mr. C. had several severe impairments, he found that those impairments did not last at least one year, so Mr. C. did not qualify as disabled. Mr. C. argues that this finding was erroneous for several reasons.[2] He

---

[2] Mr. C. also argues that the ALJ lacked authority to adjudicate his claim because an ALJ is an inferior officer who must be appointed under the Appointments Clause. The Commissioner responds that this argument is waived because Mr. C. did not present it to the agency. Because the Court remands for other reasons, it need not reach this argument.

argues that the ALJ's decision was internally inconsistent and unsupported by the evidence and that the ALJ erred in evaluating his testimony and the medical opinions. The Court agrees that the ALJ's findings in this respect are not supported by substantial evidence, so the Court must reverse the decision for further proceedings.

An impairment is severe if it is "a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). The ALJ concluded here that Mr. C. did not have any severe impairments that lasted at least one year, so he was not disabled. The way in which he reached that conclusion is critical, though. He did not find that Mr. C. had no severe impairments—he found that Mr. C. had several, including residuals of previous injuries to his left leg, hypertension, and prescription side effects. (R. 24 "The claimant has the severe medically determinable impairments of residuals of left lower extremity hip with remote (2004) femur internal fixation; hypertension; and prescription side effects[.]"). The ALJ found, though, that Mr. C. did not satisfy step two because those impairments did not endure as severe for at least twelve months, as is required to constitute a disability. 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). The Court agrees that this aspect of the ALJ's finding is not supported by substantial evidence or by the discussion in the ALJ's decision.

It is clear from the ALJ's discussion that the ALJ took a dim view of Mr. C.'s claimed limitations. The ALJ discussed how Mr. C. had sought very little treatment despite having the ability to afford it (Mr. C.'s parents offered to pay for any treatment he needed), and how Mr. C. did not even mention during some of his visits the issues he later claimed to be disabling. The

5

ALJ also noted discrepancies in Mr. C.'s testimony about his consumption of alcohol.[3] And he dismissed the medical opinions largely on the belief that they had relied on Mr. C.'s subjective complaints, which the ALJ believed were exaggerated.

But despite those misgivings, the ALJ apparently credited enough of Mr. C.'s complaints and the medical evidence to find that he did have several severe impairments at some point. (R. 24). The ALJ's conclusion thus turned on a finding that those severe impairments improved enough within the first year that they no longer had at least a minimal effect on Mr. C.'s ability to work. The ALJ's decision fails to draw a logical bridge in that respect, though—the decision's discussion is predominantly devoted to explaining why the ALJ did not find Mr. C. to be limited, but it does not explain how the ALJ concluded that those severe impairments improved over that timeframe. Nor does the medical evidence support a finding that Mr. C. experienced such improvement.

For example, the ALJ concluded that Mr. C. had severe impairments of hypertension and prescription side effects. (R. 24). Mr. C. had sought treatment on multiple occasions for swelling in his hands and face, which the doctors apparently attributed to his hypertension and medication. (R. 232, 252, 263). Mr. C. testified at the hearing that he experienced swelling in his hands several times a week, which could last from a few minutes to a whole day, and that during

---

[3] Though there were some potential inconsistencies in that regard, they were not as pronounced as the ALJ believed. The ALJ's decision stated that Mr. C. claimed to have last drank alcohol around December 2016 (R. 26, 27 (stating that "the claimant was not forthcoming about his alcohol use as he initially indicated no consumption since late 2016")), but that was not his testimony. Mr. C. testified that he stopped drinking "a 12-pack of alcohol a day" around that time, not that he stopped drinking altogether. (R. 44 ("Q. Now, do you still consume about a 12-pack of alcohol a day of beer? A. No. Q. Okay. When did that stop? A. About the time that I went to the hospital, maybe December.")).

the swelling he was unable to use his hands even to pick up a can of pop. (R. 50–51). The discussion in the ALJ's opinion indicates that the ALJ gave little credence to those claims.

And yet, the ALJ still found that these conditions were severe at some point. (R. 24). To find that Mr. C. nonetheless failed to meet step two, the ALJ found that this condition did not endure as severe for at least twelve months, but the evidence does not support that finding. At the hearing, Mr. C. testified that he had experienced the swelling in his hands for a couple years. (R. 51). The medical records likewise suggest that the condition had been ongoing for some time. When he sought treatment in December 2016, Mr. C. reported that this condition had been ongoing for the past five years. (R. 232). The following month, Mr. C.'s doctor stated that this was "a chronic problem," that it began "more than 1 year ago," and that the "problem is uncontrolled." (R. 252). A month later, the doctor again characterized this as "a chronic problem" that started "more than 1 year ago." (R. 263). The doctor also stated that the "problem has been gradually worsening since onset" and was "uncontrolled." *Id.* The ALJ did not acknowledge these statements and cited no evidence that Mr. C. in fact experienced improvement. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). The ALJ might have been able to find that Mr. C. did not actually experience or was not limited by this condition, but that's not what the ALJ found. Instead, he found that these limitations were severe but that they improved before they lasted for a year, and the latter part of that finding is not supported by the record.

The ALJ's analysis of Mr. C.'s leg and hip conditions suffered from similar flaws. Mr. C. claimed to suffer pain and swelling in his left leg and hip as a result of a fall he experienced in

7

December 2014, as well as a car accident he was in in 2004, for which he had hardware inserted in his leg. The ALJ discounted the effects of the December 2014 fall largely because Mr. C. did not seek any further treatment for those effects after his initial hospital visit, which was fair. As to Mr. C.'s surgically repaired leg, though, the ALJ noted that Mr. C. had performed medium to heavy work for a number of years even after that incident, showing that it did not preclude him from working. (R. 28). But to say that a claimant is not disabled is not to say that the claimant does not have any severe impairments—neither of the agency reviewing physicians concluded that Mr. C. was disabled either, but they each opined that he had severe impairments in this respect.[4] (R. 64, 72). And again, the ALJ found that Mr. C. did have a severe impairment in this regard, just that it did not last at least a year. Without any evidence that Mr. C. actually experienced improvement in that long-standing injury, the ALJ's finding that the condition was severe but did not meet the durational requirement cannot stand.

Finally, the ALJ concluded his discussion by stating that, even if Mr. C. did have a severe impairment, he was still able to perform light work, in which case he would be deemed able to perform other work at step five. The Commissioner defends that finding only in a footnote, though, and the Court cannot find that the ALJ adequately supported this finding. The ALJ offered no more than a conclusory assertion that any limitations would not prevent Mr. C. from performing light work. The ALJ did not explain what those limitations would be if Mr. C. had them, or how those limitations would translate to light work (as opposed to sedentary work, to which the examining and reviewing physicians believed Mr. C. was limited). Without such an explanation, the Court cannot affirm the ALJ's decision on that alternative basis. *See Scott v.*

---

[4] The ALJ made a similar point relative to the swelling in Mr. C.'s hands (R. 29), but the point falls short in that context for the same reason.

*Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) ("We require that an ALJ build an accurate and logical bridge from the evidence to his conclusions so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." (quotation and alteration omitted)). If the ALJ finds on remand that Mr. C. has a severe impairment, he will need to explain how those limitations translate to a particular residual functional capacity and assess whether a person with that residual functional capacity is able to work.

## V.  CONCLUSION

The Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED:  May 28, 2019

/s/ JON E. DEGUILIO
Judge
United States District Court